# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

**UNITED STATES OF AMERICA**

**V.**

**VICTOR DELGADO, A/K/A "BITIN", and**

**JOAN REYES-SANTANA, A/K/A "FLAKO"**

# CRIMINAL COMPLAINT

M.J. No. _4 m 0441 RBC -01_
_2004 m 0441 RBC -02_

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. From in or about <u>November 2003</u> to in or about <u>December 2003</u>, on or about <u>November 19, 2003</u>, and on or about <u>December 8, 2003</u>, and on or about <u>January 12, 2004</u>, respectively, in <u>Essex County</u>, in the District of <u>Massachusetts</u> and elsewhere,

**DEFENDANTS did conspire to possess with intent to distribute heroin, a Schedule I controlled substance,**

**VICTOR DELGADO did, after having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly possess in and affecting commerce, a firearm, to wit: a Ruger .357 magnum handgun,**

**VICTOR DELGADO did knowingly and intentionally possess with intent to distribute and distribute heroin, a Schedule I controlled substance, and**

**JOAN REYES-SANTANA did knowingly and intentionally possess with intent to distribute and distribute heroin, a Schedule I controlled substance,**

in violation of Title <u>21</u> United States Code, Section(s) <u>846 & 841(a)(1)</u>, and Title <u>18</u> United States Code, Section <u>922(g)(1)</u>.

I further state that I am a **Special Agent with the Federal Bureau of Investigation** and that this complaint is based on the following facts: **See attached Affidavit of Jeffrey E. Wood, Jr.**

Continued on the attached sheet and made a part hereof:    X Yes   ☐ No

Signature of Affiant

**JEFFREY E. WOOD, JR.**
Special Agent - FBI

Sworn to before me and subscribed in my presence,

<u>January 19, 2004</u> at 1:2? pm at
Date

Boston, Massachusetts
City and State

Signature of Judicial Officer

ROBERT B. COLLINGS
UNITED STATES MAGISTRATE JUDGE

## AFFIDAVIT OF JEFFREY E. WOOD, JR.

I, Jeffrey E. Wood, Jr., being duly sworn, depose and state as follows:

### INTRODUCTION

1.  I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been employed by the FBI for more than four years. I am currently assigned to the Violent Crime Task Force ("VCTF") investigating, among other things, drug and drug-related crimes in the Lawrence, Massachusetts area.

2.  During my four plus years with the FBI, I have been involved in numerous investigations relating to a wide variety of suspected criminal activity including drug and firearms trafficking, bank robberies, armored car robberies, and kidnaping. I have received training in the field of narcotics enforcement and investigations including, but not limited to, training regarding the identification of common street drugs such as heroin. Through my training, education, and experience, I have also become familiar with the manner in which illegal drugs are transported, stored, and distributed, and with the methods of payment for such drugs.

3.  I am submitting this affidavit for three reasons. The first is in support of an application for a four count criminal complaint charging: (i) that, from a time unknown, but at least by in or about November 2003 to at least in or about December 2003, VICTOR DELGADO, A/K/A "BITIN", and JOAN REYES-SANTANA,

A/K/A "FLAKO", conspired to possess with intent to distribute and to distribute heroin, a Schedule I controlled substance, in violation of 21 U.S.C. §846; (ii) that on December 8, 2003, DELGADO possessed with intent to distribute and distributed heroin, in violation of 21 U.S.C. §841(a)(1); (iii) that, on January 12, 2004, REYES-SANTANA possessed with intent to distribute and distributed heroin, in violation of 21 U.S.C. §841(a)(1); and (iv) that on November 19, 2003, DELGADO, after having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting commerce, a firearm, to wit:  a loaded, Ruger .357 magnum handgun, in violation of 18 U.S.C. §922(g)(1).

5.  As is explained more fully below, DELGADO, who had previously been convicted of assault and battery on a police officer, a crime punishable by imprisonment for a term exceeding one year, made a controlled sale of a loaded, Ruger .357 magnum revolver to a cooperating witness working with the FBI (the "CW")[1] on November 19, 2003; from November 4, 2003 through December 4, 2003, DELGADO and REYES-SANTANA made eleven controlled sales of heroin to the cooperating witness; and on December 8, 2003 and December 9, 2003, DELGADO made two controlled sales of heroin to the CW.  In addition, on January

---

[1] The CW is a convicted drug trafficker with a significant criminal record and has been paid by the government for his/her assistance in this investigation.

2

12, 2004, REYES-SANTANA made a controlled sale of heroin to the CW. All of the sales were surveilled by law enforcement officers and consensually recorded on audio and/or video tape.

6. The second reason I am submitting this affidavit is in support of an application for the issuance of a search warrant authorizing the search of a residence located at 30 May Street, Apartment C, Lawrence, MA, (hereinafter "Target Premises 1," more fully described below). As described more fully below, Target Premises 1 is the residence of DELGADO, and is the location where DELGADO sold the heroin to the CW on December 8, 2003 and is where the CW gave DELGADO the money for the heroin. Target Premises 1 is also the location where EDDY LOPEZ, A/K/A "SWIFT", a close associate of DELGADO, sold the CW cocaine, in DELGADO's presence, on December 17, 2003. For the reasons explained herein, I submit that there is probable cause to believe that evidence of violations of the federal drugs laws, including 21 U.S.C. 841(a)(1), exists in Target Premises 1, including, but not limited to, heroin; cocaine; drug packaging materials, cutting agents, and other paraphernalia; U.S. currency obtained as the result of drug sales; documents and other records reflecting income from the purchases and sales of heroin, cocaine, or other drugs; documents and other records reflecting telephone numbers and/or addresses for co-conspirators, suppliers, and customers; and telephones or communication devices used to facilitate the

3

distribution of narcotics.[2]

7.   The third reason I am submitting this affidavit is in support of an application for the issuance of a search warrant authorizing the search of a residence located at 9 Ohio Street, Apartment 2 or "Second Floor", including the vacant first floor apartment (designated as 7 Ohio Street), Lawrence, MA, (hereinafter "Target Premises 2," more fully described below). As is more fully described below, the second-floor apartment at Target Premises 2 is the residence of REYES-SANTANA.  On January 12, 2004, the CW made a controlled buy of heroin from REYES-SANTANA.  The sale took place in a common area vestibule inside a side door of 9 Ohio Street.  From the common area, REYES-SANTANA went into the first floor apartment of 7 Ohio Street, obtained the heroin, made the exchange with the CW, and then took the money from the sale upstairs to his apartment on the second floor.[3]  I submit that there is probable cause to believe that

---

[2] As explained more fully below, because DELGADO sold a firearm in this case, has a history of violent crime, and has bragged about using and owning firearms, I am also requesting permission to enter Target Premises 1 without knocking.

[3] As explained more fully below, records reflect that REYES-SANTANA lives at 9 Ohio Street, Apartment 2 (referred to alternatively in records as 9 Ohio Street, "Second Floor"). Records reflect that the first floor apartment of the three-family structure, which is directly below 9 Ohio Street, Second Floor, is designated as 7 Ohio Street, Apartment 1 (or "First Floor").  Surveillance over the last two weeks has determined that this first floor apartment is vacant.  Based on my training and experience, I believe that REYES-SANTANA is using the vacant first floor apartment of 7 Ohio Street as a stash location for

evidence of violations of the federal drugs laws, including 21 U.S.C. 841(a)(1), exists in Target Premises 2, including, but not limited to, heroin; drug packaging materials, cutting agents, and other paraphernalia; U.S. currency obtained as the result of drug sales; documents and other records reflecting income from the purchases and sales of heroin, cocaine, or other drugs; documents and other records reflecting telephone numbers and/or addresses for co-conspirators, suppliers, and customers; and telephones or communication devices used to facilitate the distribution of narcotics.

8.   This affidavit is submitted for the limited purpose of establishing probable cause to believe that DELGADO and SANTANA-REYES have committed the above-described offenses and that there is probable cause to believe that evidence of those offenses is located in Target Premises 1 and Target Premises 2.  Accordingly, I have not included each and every fact known to myself and other law enforcement officers involved in this investigation.  As a result of my personal participation in the investigation, interviews with and analysis of reports submitted by other law enforcement personnel, interviews of confidential sources, and my consultations with other law enforcement officers, I am familiar

---

his heroin.  Accordingly, I am requesting that authorization to search REYES-SANTANA's residence at 9 Ohio Street, Apartment 2, include authorization to search REYES-SANTANA's stash location at 7 Ohio Street, Apartment 1.

with this investigation.

9.  Target Premises 1 is described as follows:

30 May Street, Apartment C, Lawrence, MA, which is
occupied by VICTOR DELGADO, A/K/A "BITIN" and his
girlfriend, MARISOL ROQUE, A/K/A "CHINA".  30 May
Street is described as a two-story, multi-family
residence, light yellow in color.  There is a parking
lot area in front of the structure and a wooden fence
on the left side of the structure.  There is an air
conditioning unit visible in the window on the second
floor right side of the structure.  There is one front
door in the center of the structure with a light above
the door and a small, circular window above the light.
The upper portion of the door is glass and it leads to
a common area inside the structure.  There are two
mailboxes on either side of the door (for a total of
four) and a call box on the right side near the door.
There is no number visible on the door or anywhere else
on the structure.  There are two steps leading to the
door.  Apartment C is on the left side, first floor of
30 May Street (when facing the structure).

Two photographs of Target Premises 1 are attached to this

affidavit as Exhibit A.

10.  Target Premises 2 is described as follows:

9 Ohio Street, Apartment 2, Lawrence, MA, is the
residence of JOAN REYES-SANTANA, A/K/A "FLAKO".  9 Ohio
Street is described as a three-story, three-family
dwelling, with light grey vinyl siding, located at the
corner of Ohio Street and Marble Avenue.  Each floor is
a separate apartment and each floor has a separate,
dark grey deck area at the front (facing Ohio Street)
and a separate, dark grey deck area on the side (facing
Ames Street).  There are two doors, side by side, on
the front of the structure.  The left door has the
number 9 in black in the center of the door and leads
to the second floor apartment (Apt. 2) and the third
floor apartment (Apt. 3).  The right door, which has no
number, leads to the first floor apartment (Apt. 1).
There are two mailboxes, one black and one white, in
between the two doors, and four steps leading up to the
two doors.  There is a maroon door on the right side
(the Marble Avenue side) of the building.  This side

6

door opens to a common area vestibule (this is the
location where the CW met REYES-SANTANA on 1/12/04).
Inside the vestibule, on the left side, is the door of
an apartment designated as 7 Ohio Street, Apartment 1
(or "First Floor").  On the right, is a stairway leading
to 9 Ohio Street, Apt. 2 (or "Second Floor") and 9 Ohio
Street, Apt. 3 (or "Third Floor").  7 Ohio Street, Apt.
1 is directly below 9 Ohio Street, Apt. 2.  There is
also a rear door at the back of the structure and a
driveway on the left side of the structure.

Three photographs of Target Premises 2 are attached to this

affidavit as Exhibit B.

## INITIATION OF THE INVESTIGATION

11.  For the past six months, I have been the case agent on

a multi-agency investigation of the Dome Dwellers, formerly known

as the Essex Street Posse, a violent street gang operating in

Lawrence, Massachusetts.  Since the beginning of the

investigation, law enforcement agents have made numerous

purchases of controlled substances and firearms from members and

associates of the Dome Dwellers using confidential informants and

cooperating witnesses.

12.  The investigation of the Dome Dwellers was initiated in

the Summer of 2003, based on information from law enforcement and

confidential sources concerning drug trafficking by the Dome

Dwellers in and around the area of the Essex Street Projects in

Lawrence, Massachusetts.  Law enforcement and confidential

sources identified EDDY LOPEZ, A/K/A "SWIFT", as the leader of

the Dome Dwellers, and indicated that he was known to carry a

firearm.  Law enforcement and confidential sources also indicated

7

that an individual named VICTOR DELGADO, A/K/A "BITIN", was a close associate of LOPEZ and that DELGADO was also known to carry a firearm.

13. The investigation into the heroin trafficking of DELGADO and REYES-SANTANA was initiated in September 2003 based on information provided by confidential sources about the drug trafficking of DELGADO in the Lawrence area, including DELGADO distributing drugs to members of the Dome Dwellers. During the course of the investigation of DELGADO, DELGADO's heroin supplier was identified as REYES-SANTANA.

## OVERVIEW OF THE BUYS

14. From November 4, 2003 through December 4, 2003, DELGADO and REYES-SANTANA made thirteen controlled sales of heroin to the CW and, on December 8, 2003 and December 9, 2003, DELGADO made two additional sales of heroin to the CW. On November 19, 2003, DELGADO sold the CW the use of a loaded, Ruger .357 Magnum handgun for one week for $500. In addition, on January 12, 2004, REYES-SANTANA made a controlled sale of heroin to the CW. All of the buys were surveilled by law enforcement agents and all of the buys and many of the conversations leading up to them were consensually recorded, many in Spanish, on audiotape and/or videotape.

15. On November 4, 2003, DELGADO and REYES-SANTANA sold the CW 10.2 grams of heroin for $950. On November 7, 2003, DELGADO

8

and REYES-SANTANA sold the CW 9.9 grams of heroin for $950 and 23.4 grams of marijuana for $50. On November 11, 2003, DELGADO and REYES-SANTANA sold the CW 19.9 grams of heroin for $1,900. On November 13, 2003, DELGADO and REYES-SANTANA sold the CW 19.4 grams of heroin for $1,900. On November 17, 2003, DELGADO and REYES-SANTANA sold the CW 19.4 grams of heroin for $1,900. On November 19, 2003, DELGADO and REYES-SANTANA sold the CW 19.4 grams of heroin for $1,900. In addition, on November 19, 2003, DELGADO sold the CW the use of DELGADO's .357 magnum handgun for one week for $500. On November 20, 2003, DELGADO and REYES-SANTANA sold the CW 9.7 grams of heroin for $950. On November 25, 2003, DELGADO and REYES-SANTANA sold the CW 19 grams of heroin for $1,900. On December 1, 2003, DELGADO and REYES-SANTANA sold the CW 19.1 grams of heroin for $1,900 plus an additional $100 that DELGADO said the CW was short on the pervious buy. On December 3, 2003, DELGADO and REYES-SANTANA sold the CW 9.8 grams of heroin for $860. On December 4, 2003, DELGADO and REYES-SANTANA sold the CW 9.6 grams of heroin for $800. On December 8, 2003, DELGADO sold the CW one finger (one "finger" or "egg" is generally 10 grams) of heroin for $800. On December 9, 2003, DELGADO sold the CW one finger of heroin for $850.[4]

---

[4] Each of the thirteen purchases were submitted to the DEA Northeast Regional Laboratory (NERL) for analysis and certification. DEA NERL certified that the first eleven buys

16.  I and other law enforcement officers employed certain procedures in connection with the gun buy and each of the thirteen heroin buys.  Prior to all of the buys, I and/or other law enforcement officials searched the CW and the car he/she would be driving to ensure that the CW had no controlled substances or cash on him/her.  Upon completing the search, the CW was given a recording device, a transmitter, a set amount of official government funds ("OGF"), and a car equipped with audio/video surveillance equipment.  In each buy, the CW was then surveilled to Target Premises 1, Lawrence, MA, where the CW met with DELGADO.  On most occasions, DELGADO's live-in girlfriend, MARISOL ROQUE, A/K/A "CHINA", was present at Target Premises 1.

17.  With respect to the first two buys, on November 4, 2003 and November 7, 2003, after the CW arrived at Target Premises 1, DELGADO called his heroin supplier, whom DELGADO referred to as "FLAKO" (later identified as REYES-SANTANA), and ordered the heroin.  REYES-SANTANA then delivered the heroin to DELGADO at the Target Premises and then DELGADO gave the heroin to the CW in exchange for the OGF.

18.  The next eight controlled buys from November 11, 2003 through December 4, 2003 took place in a similar fashion,

---

had the net weights listed above and that each contained a detectable amount of heroin hydrochloride, a Schedule I controlled substance.  Certification is pending for the last two buys, both of which field tested positive for heroin.

generally as follows.  After the CW arrived at Target Premises 1, DELGADO called REYES-SANTANA and ordered the heroin and then agents followed the CW and DELGADO to Target Premises 2 (these car rides were videotaped from inside the CW's car, as well as audiotaped).  When they arrived, the CW gave DELGADO the OGF and DELGADO went into the maroon colored, side door of Target Premises 2 (on the Marble Avenue side), returned to the CW's car a few moments later with the heroin, which he gave to the CW, and then the CW and DELGADO were followed back to Target Premises 1.

19.  A review of telephone toll records for DELGADO's cell phone number (978-902-1647), the number used by the CW to contact DELGADO throughout the investigation, shows numerous telephone calls in November and December 2003 between DELGADO's cell phone number and telephone number 978-590-7571, which was identified from records obtained from Sprint Spectrum on 12-15-03 as the land line of "JOAN REYES" at 9 Ohio Street, Apartment 2, Lawrence, MA.[5]

20.  In the final two heroin sales, on December 8, 2003 and December 9, 2003, the CW met DELGADO at Target Premises 1 and DELGADO provided the CW with the heroin in exchange for the OGF. In the first of these buys, DELGADO had the heroin at Target Premises 1 and in the second buy DELGADO took a cab to get the heroin (he was not followed) and returned.

---

[5] We have not yet received toll records for January 2004.

21.   Prior to several of the buys, the CW engaged in one or more consensually recorded telephone conversations with DELGADO in which they agreed that DELGADO would sell the CW a set amount of heroin for a set price.  Based on comparison with an Essex County Correctional Facility booking photograph of DELGADO, I recognized DELGADO on the videotapes of several of the recorded meetings between DELGADO and the CW.  The buys described below are representative of the thirteen buys.

### THE SALE OF 10.2 GRAMS OF HEROIN ON NOVEMBER 4, 2003

22.   On November 4, 2003, the CW told me that DELGADO had called the CW at approximately 5 p.m. that day and said that he (DELGADO) would sell the CW 10 grams (one "egg" or "finger") of heroin for $950 and told the CW to meet DELGADO at DELGADO's house in 30 minutes.  This incoming call was not recorded.

23.   Shortly before 6 p.m., acting under my direction and under surveillance, the CW drove to Target Premises 1.  Agents monitoring the transmitter (including Lawrence Police Detective Richard Brooks, who is fluent in Spanish), heard the CW enter Target Premises 1 and meet with DELGADO, with whom Detective Brooks was familiar and whose voice Detective Brooks recognized. On the transmitter, Detective Brooks heard DELGADO make a telephone call and requested that the person on the other line bring him "one".  DELGADO, the CW, and DELGADO's associate, EDDIE LOPEZ, A/K/A "SWIFT", waited in the living room and discussed

12

selling drugs in Haverhill.

24. A short time later, an individual whom DELGADO referred to as "FLAKO" (subsequently identified as REYES-SANTANA) arrived at Target Premises 1 and DELGADO and REYES-SANTANA went into the kitchen. A few moments later, DELGADO walked back into the living room and handed the CW a package of heroin in exchange for the $950 in OGF. Shortly thereafter, the CW left Target Premises 1, met with other agents and me at a nearby location and gave me one "finger" or "egg" of heroin packaged in a pink, wax case cylinder. The DEA laboratory later certified that the substance purchased from DELGADO and REYES-SANTANA was 10.2 grams of heroin hydrochloride, a Schedule I controlled substance.

### THE SALE OF A .357 MAGNUM HANDGUN AND 19.4 GRAMS OF HEROIN ON NOVEMBER 19, 2003

25. On November 19, 2003, I met with the CW and the CW said that he/she talked with DELGADO and DELGADO told the CW to come to DELGADO's house because DELGADO was trying to get the CW a gun. The CW, at my instruction, had previously requested a gun from DELGADO. At approximately 7:30 p.m., surveillance agents established surveillance at Target Premises 1 and Target Premises 2 (where DELGADO had picked up the heroin sold to the CW during earlier controlled buys on November 11, November 13, and November 17, 2003). I then told the CW to go to Target Premises 1 and meet with DELGADO.

13

26. The CW was surveilled to Target Premises 1, where he/she arrived at approximately 7:36 p.m. Surveillance agents saw the CW go into Target Premises 1 and Detective Brooks, on the transmitter, heard the CW talking with DELGADO in Spanish and heard DELGADO making a telephone call. At approximately 7:50 pm, Brooks heard the CW and DELGADO leave Target Premises 1 and surveillance agents followed the CW and DELGADO to Target Premises 2.

27. Detective Brooks has reviewed the videotape and the audiotape of the November 19, 2003 meeting in the CW's car between DELGADO and the CW. Detective Brooks recognized DELGADO on the video and recognized DELGADO's voice on the audiotape. During the drive, DELGADO said that he would pawn the CW his (DELGADO's) gun for one week for $500. DELGADO can also be heard on the audiotape telling the CW that DELGADO is getting additional guns and discussing selling additional guns to the CW. According to the CW, DELGADO also told the CW that DELGADO is a member of NETA, which I know to be a national gang that operates out of the prison system.

28. DELGADO and the CW got to Target Premises 2 at approximately 7:56 p.m. The CW then gave DELGADO $1,900 in OGF and DELGADO went into Target Premises 2, returned to the CW's car at about 8:02 p.m. and gave the CW two "fingers" of heroin. On the audiotape, the CW and DELGADO can be heard talking about the

14

heroin in Spanish -- for example, the CW asked if its "the same thing" and DELGADO responded "yes it's the same thing."

29.  Agents followed the CW and DELGADO back to Target Premises 1, where they arrived at approximately 8:05 p.m. and went into Target Premises 1.  When they got to Target Premises 1, DELGADO put on a glove, reached under the sofa, and pulled out a .357 magnum revolver.[6]  The CW gave DELGADO $500 and DELGADO put the gun on a table next to the CW.  The CW picked up the gun and left Target Premises 1.  As the CW left, DELGADO reminded the CW to call him the next day about buying the other guns.

30.  Agents followed the CW to the meeting location where he/she gave me a Ruger .357 magnum revolver loaded with four rounds, as well as two fingers of heroin -- one finger was covered in a pink wax like material and the other finger was wrapped in a thin plastic material.  The DEA laboratory later certified that the substance purchased from DELGADO and REYES-SANTANA was 19.4 grams of heroin hydrochloride, a Schedule I controlled substance.  Ruger .357 magnum revolvers are manufactured outside of Massachusetts.

---

[6] The CW saw what appeared to be a .357 magnum revolver under the same couch at Target Premises 1 during a controlled heroin buy on November 17, 2003.  During that buy, DELGADO's associate, EDDY LOPEZ, also showed the CW a small black pistol that LOPEZ had on his person at Target Premises 1.  During the November 17 buy, DELGADO also told the CW that DELGADO was expecting a shipment of 200 grams of heroin the following day.

## THE SALE OF ONE "FINGER" OF HEROIN
## ON DECEMBER 8, 2003 AT TARGET PREMISES 1

31. On the evening of December 8, 2003, I met with the CW and the CW told me that DELGADO had told the CW to bring enough money tonight because he had something good for the CW. At approximately 7:52 p.m. that night, agents set up surveillance at Target Premises 1.

32. Acting under my direction, the CW was followed to Target Premises 1, where he/she met with DELGADO and a third individual. The CW provided DELGADO with $800 in OGF in exchange for one finger (generally ten grams) of heroin. DELGADO told the CW that DELGADO was expecting 80 grams of heroin tomorrow and would sell the CW two fingers and front the CW three additional fingers. The CW asked DELGADO about a gun and DELGADO said he had a .40 caliber but could not sell it to the CW because it was "dirty" (i.e., had been used in a shooting). On the transmitter, Detective Brooks heard the CW talking with DELGADO and a third individual in Spanish and recognized DELGADO's voice.

33. At approximately 8:24 p.m., the CW left Target Premises 1 and was followed to the meeting location, where he/she gave me a finger of suspected heroin packaged in a thin rubber like material.[7] The substance inside the finger field tested positive

---

[7] All of the heroin purchased during the thirteen controlled buys was either wrapped in a pink wax like substance, with a thin rubber like material underneath, or only in the thin rubber like material.

16

for heroin and was sent to the DEA laboratory for further
testing.

### THE PURCHASE OF 13 GRAMS OF COCAINE AND 3 GRAMS OF MARIJUANA ON DECEMBER 17, 2003 AT TARGET PREMISES 1

34.  On December 17, 2003, I met with the CW who told me
that he/she had received a call from DELGADO's associate, EDDY
LOPEZ, who told the CW that "they" had done a home invasion and
gotten 240 grams of heroin, and that LOPEZ had twenty grams to
sell to the CW for $1,200.  LOPEZ also said that he had cocaine
to the CW.  At approximately 7:11 p.m., the CW made a
consensually recorded call to 978-397-2180, LOPEZ's cellular
telephone, and LOPEZ told the CW to meet LOPEZ at DELGADO's
residence -- Target Premises 1.

36.  At approximately 7:20 p.m., agents set up surveillance
at Target Premises 1.  The CW was then followed to Target
Premises 1.  Agents saw the CW go into Target Premises 1 and, on
the transmitter, I overheard him/her meeting with LOPEZ and
DELGADO.  The CW stated that LOPEZ was sitting on a couch holding
a bag containing what appeared to be five to six ounces of
cocaine, and that LOPEZ put the bag on the couch and then threw
the CW a small bag of cocaine, explaining to the CW that it was
better than the cocaine LOPEZ had shown the CW at LOPEZ's house
the other day.  The CW then gave LOPEZ $600 in OGF for the
cocaine.

17

37.   The CW asked LOPEZ how much cocaine he had in the bag and LOPEZ said that he had 130 grams in the bag and that he was going to sell it to a kid for $3,000.  The CW then asked DELGADO for some heroin and DELGADO said he had some earlier but had moved it to another location and they would have to go get it. The CW then asked LOPEZ about getting some heroin and LOPEZ told the CW to talk to DELGADO and explained that he and DELGADO sold the same heroin but had their own customers.  LOPEZ also said that his cousin was selling LOPEZ a .45 semi-automatic pistol and explained that he (LOPEZ) was adding to his collection of guns.

38.   After an unknown male entered the apartment, the CW asked DELGADO if DELGADO's girlfriend, MARISOL ROQUE, A/K/A "CHINA", had any marijuana for sale.  ROQUE overheard and said that she did.  At the CW's request, ROQUE provided the CW with two ten dollar bags of marijuana in exchange for twenty dollars. The CW, DELGADO and the unknown male then drove, under surveillance, to a location on High Street in Lawrence to get the heroin for the CW.  When they arrived at the location, the CW gave DELGADO $1,200 in OGF and DELGADO gave it to the unknown male who got out of the car and never returned.  After waiting for a period of time, and after DELGADO briefly went into the location, DELGADO told the CW that they had been burned for the $1,200.

18

39.  Under surveillance, the CW and DELGADO returned to Target Premises 1 and then the CW was followed back to the meeting location, where he/she gave me a plastic bag containing cocaine, and two bags of marijuana.  The substances the CW handed me field tested positive, respectively, for cocaine and marijuana.  The DEA laboratory later certified that the substances contained, respectively, 13.3 grams of cocaine hydrochloride and 3.1 grams of marijuana.

## THE SALE OF HEROIN ON JANUARY 12, 2004 AT TARGET PREMISES 2

40.  At approximately 10:51 p.m. on January 12, 2004, at my direction, the CW made a consensually recorded call to DELGADO at 978-902-1647 (DELGADO's cell phone number).  REYES-SANTANA answered the phone and identified himself as "FLAKO".  REYES-SANTANA told the CW to call back if the CW needed anything.  At 11:02 p.m., the CW made a consensually recorded call to the same telephone number and spoke with REYES-SANTANA.  The CW said he/she had $500 but REYES-SANTANA indicated that he would not break down a finger and said to call back if the CW could come up with $150 more.  The CW made a third consensually recorded call to REYES-SANTANA and indicated he/she had the money and they agreed to meet at Target Premises 2.

41.  I told the CW to drive to Target Premises 2 (where surveillance agents had already gone) and meet with "FLAKO".  At approximately 11:20 p.m. on January 12, the CW was followed to

19

Target Premises 2 and was seen going into the maroon side door of Target Premises 2 (on the Marble Avenue side). The CW met REYES-SANTANA in the common area just inside the doorway. REYES-SANTANA then opened the door to the first floor apartment (the door is located on the same level just to the left after entering the building through the maroon side door), went into the apartment and returned with one finger of heroin.[8] REYES-SANTANA and the CW exchanged the heroin for the $650 in OGF. REYES-SANTANA then went up the stairs and the CW saw REYES-SANTANA enter the second floor apartment.

42. The CW returned to his/her car and was followed a nearby location. On the way to the meeting location, the CW received a call from REYES-SANTANA who said he wanted to give the CW his telephone number. The CW said he did not have a pen and would call REYES-SANTANA on DELGADO's cell phone shortly. When the CW got to the meeting location, he/she gave me one finger of heroin packaged in a pink wax like material similar to the packaging used in many of the other controlled buys in this investigation. The substance the CW gave me field tested positive for heroin and was sent to the DEA laboratory for

---

[8] Records reflect that the first floor apartment is designated as 7 Ohio Street, Apt. 1 (or "First Floor"), Lawrence, MA. Surveillance over the past week has determined that the apartment is vacant. Based on my training and experience, I believe that REYES-SANTANA is using the vacant first floor apartment of 7 Ohio Street as a stash location for his heroin.

further testing.  The CW identified the person he/she bought the heroin from on January 12, 2004 as the same person who delivered the heroin to Target Premises 1 on November 4, 2003 and November 7, 2003, i.e., REYES-SANTANA.

43.  At approximately 11:50 p.m. on January 12, 2004, the CW made a consensually recorded call to 978-902-1647 (DELGADO's cell phone number).  REYES-SANTANA answered and gave the CW the following telephone number to call in the future:  978-590-7571.

44.  A review of Sprint Spectrum records indicated that telephone number 978-590-7571 is subscribed to JOAN REYES at 9 Ohio Street, Apartment 2, Lawrence, MA, and that the date of birth and social security number on file at Sprint Spectrum for JOAN REYES are the same as those appearing on the criminal record of JOAN REYES-SANTANA.

### THE IDENTIFICATION OF REYES-SANTANA

45.  On January 14, 2004, at approximately 9:30 p.m., at my direction, the CW made a consensually recorded call to 978-590-7571 and spoke with REYES-SANTANA and they agreed to meet at 10 p.m. and go out to a club.  At approximately 9:57 p.m., the CW made another consensually recorded call to REYES-SANTANA, who said he was ready and told the CW to come pick him up.  I then told the CW to go meet REYES-SANTANA at Target Premises 2.

46.  Surveillance was set up at Target Premises 2 and the CW was followed to Target Premises 2.  REYES-SANTANA came out of

21

Target Premises 2 by the side door and got into the CW's car, which would not start. The CW and REYES-SANTANA sat in the car for several minutes and had a conversation in Spanish. This meeting was audiotaped and videotaped. Lawrence Police Detective Richard Brooks, who is fluent in Spanish, and I listened on the transmitter, and Detective Brooks has watched and listened to the video/audiotape of the conversation. The CW told REYES-SANTANA that he/she had sources for heroin who need someone to move it and asked REYES-SANTANA how much heroin he moved. REYES-SANTANA said that he moves about 200 grams per week and said that if the CW would front him 100 grams he would sell 10 grams at a time and pay back the CW after each 10 gram sale. After a few minutes, I directed a Lawrence Police Department cruiser to pull up and talk to the CW and REYES-SANTANA. FBI Special Agent Mark Karangekis and Lawrence Police Detective Richard Brooks also pulled up in a separate vehicle. After asking what the problem was and whether they needed assistance, S/A Karangekis asked REYES-SANTANA if he had any identification. REYES-SANTANA produced a Massachusetts driver's license with the name JOAN REYES-SANTANA and an address of 9 Ohio Street, Lawrence, MA. REYES-SANTANA also showed S/A Karangekis a purported Puerto Rico driver's license under that name.

47. Law enforcement officers called a tow truck which came and jump started the car. Under surveillance, the CW and

SANTANA-REYES then drove to Leo's Pub at the corner of Essex and Broadway Streets, where the CW dropped off REYES-SANTANA. After dropping off REYES-SANTANA, the CW was followed back to a nearby location. The CW said that the individual who was in the car with him/her was the same person who sold the CW the heroin on January 12, 2004, and the same person who brought the heroin to Target Premises 1 on November 4, 2003 and November 7, 2003, i.e., REYES-SANTANA.

## ADDITIONAL INFORMATION REGARDING DELGADO

48.  On December 30, 2003, I met with the CW, who said that DELGADO had called the CW and asked the CW to return DELGADO's .357 magnum.  The CW told DELGADO that he/she had lost the gun. DELGADO asked the CW if the CW had given the gun to the police, and then said that he and LOPEZ needed to speak with the CW, that there was a rumor on the street that the CW was working for the police, and demanded that the CW come to DELGADO's house.  The CW refused.

49.  At approximately 9:38 p.m. on December 30, 2003, the CW made a consensually recorded call to LOPEZ at 978-397-2180, the cellular phone of LOPEZ.  The CW told LOPEZ what DELGADO had said and LOPEZ reassured the CW that LOPEZ still wanted to do business with the CW.

50.  On January 14, 2004, the CW made a consensually recorded call to DELGADO at DELGADO's new cell phone number, 978-

390-5948,[9] which had appeared on the CW's caller ID when DELGADO had called the CW earlier that week.  During the January 14, 2004 recorded call, DELGADO told the CW that DELGADO had his/her money and would exchange it for the gun.[10]

## OTHER EVIDENCE OF DELGADO'S USE OF TARGET PREMISES 1

51.  Throughout the course of this case, agents have conducted additional investigation indicating that DELGADO has resided at Target Premises 1 throughout the course of the investigation.  This aspect of the investigation has revealed the following.

A.  Records obtained on 1-13-2004 from Choice Point online, a commercial database, indicated that BITIN'S live-in girlfriend, MARISOL ROQUE, A/K/A "CHINA", SS# 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, used 30 May Street, Apartment C, Lawrence, MA, when applying for credit in November, 2003.

B.  Records obtained on 1-13-2004 from Accurint, a commercial database, indicated that MARISOL ROQUE has used 30 May Street, Apartment C, Lawrence, MA, as her address when applying for credit from November, 2003 to and including January, 2004.[11]

C.  Agents have conducted surveillance of 30 May Street, Apartment C, Lawrence, MA, over the course of the last two weeks and have observed DELGADO at the location.  For example, on January 13, 2004, FBI Special Agent Eric Slaton saw DELGADO in front of Target Premises 1, spoke with

---

[9] The number is subscribed in the name of an unknown third party.

[10] Delgado complained that he needed the gun back because he did not have one.

[11] The telephone for Target Premises 1 comes back to "EVA FERNANDEZ".  The name EVA FERNANDEZ is listed as an alias for MARISOL ROQUE on ROQUE's criminal record.

DELGADO, saw DELGADO go into Target Premises 1, saw MARISOL ROQUE and DELGADO come out of Target Premises 1 (at different times), and, subsequently, identified DELGADO from an RMV photograph.

## OTHER EVIDENCE OF REYES-SANTANA'S USE OF TARGET PREMISES 2

52.   Agents have conducted additional investigation indicating that REYES-SANTANA has resided at Target Premises 2 throughout the course of the investigation.  This aspect of the investigation has revealed the following.

A.   Records obtained on or about 12-15-03 from Sprint Spectrum indicated that, from May 12, 2003 through December 8, 2003, the subscriber for 978-590-7571 at 9 Ohio Street, Second Floor, Lawrence, MA, was JOAN REYES, DOB 8-23-80, SS# 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 (the DOB and social security number match those of JOAN REYES-SANTANA).[12]

B.   Toll records for DELGADO's cellular telephone number (978-902-1647) indicated numerous calls during November and December 2003 to the land line for 9 Ohio Street, Second Floor (978-590-7571 -- the telephone of REYES-SANTANA).

--------

53.   Based on the forgoing, I believe there is probable cause to believe that VICTOR DELGADO, A/K/A "BITIN", is engaged in the ongoing business of selling drugs out of his residence at Target Premises 1.  On December 8, 2003, DELGADO negotiated and arranged the sale of  heroin to the CW.  The sale of heroin took place at Target Premises 1 and the CW paid DELGADO the $850 in

---

[12] Records obtained on 12-19-03 for 9 Ohio Street, Apartment 2, from National Grid Electric come back to Wanda RIVERA, an unknown, female third party.

OGF at Target Premises 1.  During that meeting at Target Premises 1, DELGADO told the CW that he (DELGADO) was expecting 80 grams of heroin the following day.  DELGADO also told the CW that DELGADO had a .40 caliber handgun but could not sell it to the CW because it was "dirty" (i.e., had been used in a shooting).

54.  In addition, on December 17, 2003, DELGADO's associate, EDDY LOPEZ, A/K/A "SWIFT", sold the CW 12 grams of cocaine for $600 in OGF in DELGADO's presence at Target Premises 1.  During this sale, LOPEZ showed the CW five to six ounces of cocaine and told the CW that he (LOPEZ) had 130 grams of cocaine in a bag with him.  LOPEZ also told the CW that LOPEZ and DELGADO sold the same heroin but had their own customers.  The December 30, 2003 and January 12, 2003 conversations between the CW and DELGADO indicate that DELGADO has remained in the drug and gun business.

55.  Based on the forgoing, I believe there is probable cause to believe that JOAN REYES-SANTANA is engaged in the ongoing business of selling heroin out of Target Premises 2.  On January 12, 2003, REYES-SANTANA sold the CW one finger of heroin. REYES-SANTANA retrieved the heroin from a stash location (the vacant first floor apartment at Target Premises 2) and then returned to his residence -- the second floor apartment at Target Premises 2.  Throughout the period of the investigation, REYES-SANTANA lived at the second floor apartment at Target Premises 2 -- the location where DELGADO repeatedly picked up the heroin

26

DELGADO sold to the CW.  During the January 14, 2004 meeting in the CW's car, SANTANA-REYES told the CW that he moves about 200 grams of heroin per week.

56.  During the past week, Lawrence Police Detective Richard Brooks has surveilled Target Premises 2 on several occasions, most recently on 1/14/04, and has determined that the first floor apartment of 7 Ohio Street (directly below 9 Ohio Street, Apt. 2) has been vacant throughout the past week.  Based on my training and experience, I believe that REYES-SANTANA is using the vacant first floor apartment as a stash location for his heroin.

57.  Based upon my training and experience, as well as the training and experience of other law enforcement agents I have worked with, I am aware that it is generally a common practice for individuals who distribute controlled substances to maintain in their residences drugs, drug paraphernalia (such as scales and packaging materials), and records relating to their drug trafficking activities.

58.  Because individuals who distribute controlled substances in many instances will "front" (that is, sell on consignment) drugs to their clients, or alternatively, will be "fronted" drugs from their suppliers, such record-keeping is necessary to keep track of amounts paid and owed, and such records will also be maintained close at hand so as to readily ascertain current balances.  Often individuals who distribute

controlled substances keep "pay and owe" records to show balances
due for drugs sold in the past ("pay") and for payments expected
("owe") by the trafficker's suppliers and the trafficker's
dealers.  Additionally, individuals who distribute controlled
substances must maintain telephone and address listings of
clients and suppliers and keep them immediately available in
order to efficiently conduct their drug trafficking business.

59.  Based upon my training and experience, I am also aware
that it is a common practice for distributors of controlled
substances to conceal at their residences sums of money, either
the proceeds from drug sales or monies to be used to purchase
controlled substances.  In this connection, drug traffickers
typically make use of wire transfers, cashier's checks, and money
orders to pay for controlled substances.  Evidence of such
financial transactions and records relating to income and
expenditures of money and wealth in connection with drug
distribution would also typically be maintained in residences.

60.  Individuals who distribute controlled substances and
firearms often stay in contact with their customers and suppliers
using cellular or other telephone equipment (like the cellular
telephone used by DELGADO and SANTANA-REYES to communicate with
the CW during this investigation).  Bills, call detail records,
statements, and other documents relating to the usage of such
equipment and the information which is frequently stored within